

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00165-CR

---

DANIEL EUGENE PARKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 082688-D-CR, Honorable Steven Denny, Presiding

---

April 25, 2025

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Daniel Eugene Parker, Appellant, was convicted of possession of one to four grams of methamphetamine,[1] enhanced by two prior felonies, and sentenced to 45 years' imprisonment. In this appeal, Appellant challenges his competency to stand trial. We affirm.

---

[1] *See* TEX. HEALTH & SAFETY CODE § 481.115(a), (c).

**BACKGROUND**

A Department of Public Safety trooper stopped Appellant's vehicle after observing that it had an inoperable headlight. A subsequent search of the vehicle led to the discovery of a small plastic baggie containing a crystal-like substance, which testing revealed to be methamphetamine. The State charged Appellant with possession of a controlled substance. Appellant pleaded not guilty and the case proceeded to trial on December 6, 2022. The Honorable Pamela C. Sirmon presided over the trial.

The jury returned its verdict finding Appellant guilty around 11:30 a.m. on December 7. Shortly after the jury took a recess for lunch, Appellant's counsel announced that Appellant was withdrawing his election to have the jury assess punishment. The State objected. In light of the State's objection, the trial court held that the punishment phase would be heard by the jury.[2]

When the jurors returned from lunch for the punishment phase, the Honorable John Board was presiding.[3] The prosecutor read the enhancement paragraphs and the trial court received Appellant's plea of "not true" to each one. After the State and Appellant's counsel gave their opening statements, Appellant spoke out:

Appellant: Just give me 99.

The Court: Mr. Parker, we need you to –

Appellant: Just give me 99.

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (after guilty verdict is returned, defendant may only change sentencing election with consent from State).

[3] Judge Board informed the jurors that he was called in to conclude the trial after Judge Sirmon had a personal emergency.

2

Appellant's Counsel: No, listen –

Appellant: Could I be excused while they decide at least? I'm not going to be able to contain myself in this seat.

The Court: Ladies and gentlemen, if you could just return to the jury room.

Appellant: I mean, I don't want to (inaudible) just let them sentence me without me being here present to (inaudible). I don't want a defense. I don't want to defend it (unintelligible).

After the jury left the courtroom, the trial court explained to Appellant that the jury could consider any statements Appellant made in the courtroom, even if he was not under oath. Appellant stated that he wanted to fire his lawyer and that he "would rather like to be locked up." The trial court asked Appellant if he had ever been found to be mentally incompetent, which Appellant denied, or been treated for any kind of mental illness, to which Appellant responded that he had been prescribed Ritalin as a child. The trial court proceeded to question Appellant about his understanding of the proceedings, educational background, and medical treatment. When asked if he had been administered any medication that might affect him, Appellant revealed:

Appellant: Well, I've been having just some like (unintelligible) Aryan Brotherhood, like, came around my house. And my brother's friend, Aryan Brotherhood, Aryan Circle (unintelligible) they come around that house. They whisper when I'm sleeping with that crystal (unintelligible). They whisper to me all the time in my REM sleep, you know, try to cause a dysfunction.
         So I hear back – delayed conversation. I don't hear the actual voice within the conversation, but I hear the tone, like the tune triggers it. They're trying to mess my mind up (unintelligible).

Appellant made further statements about "triggers" and other things that he heard but stated, "I don't listen to them."

3

The trial court also asked Appellant if he had used bath salts in the past, and Appellant answered, "[T]hat's all I use because I've got problems with Aryan Brotherhood, and I've got problems with Aryan Circles. My brother made a problem with all. So pretty much all I can find is salts. I mean, I can't find methamphetamine. Pretty much that's all I use."

The trial court expressed to Appellant's counsel that he had concerns regarding Appellant's mental status. Appellant's counsel stated that his year-and-a-half history with Appellant had not raised any indications that Appellant was incompetent. The trial court decided to recess the trial, keeping the jury impaneled, to allow an evaluation of Appellant's competency.

On the following day, December 8, Dr. Gina Matteson performed a competency evaluation via telemedicine. She concluded that Appellant has an untreated mental illness and "is currently not competent to stand trial." Approximately three weeks later, the State filed a motion requesting that Appellant be examined by Dr. Michael Arambula with regard to the issue of competency. On December 28, the trial court signed the order for the second competency examination to take place in January of 2023. In January, another order for the examination was signed by the trial court, now presided over by the Honorable Steven Denny. The examination was performed via telemedicine on February 8, 2023. Dr. Arambula concluded that during both the guilt/innocence phase and the outset of the punishment phase of the trial, Appellant "had a rational as well as factual understanding of the proceedings against him, and sufficient ability to consult with his attorney with a reasonable degree of rational understanding . . . ." Dr. Arambula opined

4

that Appellant's periodic mood instability, linked to his history of drug use, fueled his verbal outburst in the courtroom.

The next month, March of 2023, new counsel was appointed for Appellant. In September, the trial court signed an order setting a jury trial[4] on the competency issue. The competency hearing was held on March 27, 2024, with no jury impaneled and no discussion on the record regarding a jury. Appellant informed the trial court that he did not want his new counsel to represent him. Appellant further stated that he had "no belief in the court system" and that he did not wish to be present in the courtroom. As the judge attempted to discuss the proceedings with Appellant, Appellant launched into an expletive-laden diatribe against the judge. Despite the trial court's efforts to engage with Appellant, Appellant continued to respond inappropriately and further informed the trial court, "I'm not going to behave." Appellant was eventually removed from the courtroom and the proceeding continued.

Appellant's counsel requested that the trial court take judicial notice of Dr. Matteson's report and stated his belief that Appellant was not competent to stand trial. Counsel for the State requested that the trial court take judicial notice of Dr. Arambula's report and urged the trial court to adopt his conclusion that Appellant was competent.[5]

---

[4] The record does not indicate whether anyone requested a jury.

[5] Neither party objected to the trial court taking judicial notice of the reports. Evidence not formally admitted at trial but nonetheless treated by the trial court and parties as if it were "is, for all practical purposes, admitted." *Requeno v. State*, No. 10-11-00046-CR, 2011 Tex. App. LEXIS 5609 at *3 (Tex. App.—Waco July 20, 2011, no pet.) (mem. op., not designated for publication); *see also In re J.R.*, 2018 Tex. App. LEXIS 7862 (Tex. App.—Amarillo Sept. 26, 2018, pet. denied) (mem. op.) (treating evidence as part of evidentiary record where parties and trial court did so and no objection was made).

The trial court concluded that Appellant was competent to proceed to sentencing and later issued findings of fact and conclusions of law.

After the trial court announced its finding on Appellant's competency, the judge asked Appellant's counsel "if they want[ed] to proceed to punishment hearing . . . with a jury or judge?"[6] The prosecutor announced that the State had no objection to either election, given that the original jury had been excused. After further discussion, Appellant's counsel replied that he wanted to discuss the matter with his client, but was "99 percent sure that we're going to go to the Court" for sentencing.

The following Monday, on April 1, the trial court issued a notice of bench trial setting for the punishment phase of the case. When the case was called on May 1, the punishment phase proceeded to a bench trial without objection from any party, including Appellant, who was present throughout the proceeding. The judgment of conviction recites that Appellant "elected to have the [trial] Court assess punishment." Following the presentation of evidence, the trial court sentenced Appellant to 45 years' imprisonment. This appeal followed.

**ANALYSIS**

Appellant raises four issues on appeal, which we address in turn.

---

[6] Appellant, having been removed from the courtroom earlier, remained outside the courtroom for this discussion.

Competency During Guilt/Innocence Phase

In his first issue, Appellant argues that the evidence, "specifically the near-contemporaneous finding of incompetence when sentencing began," required a retrospective hearing of competence during the guilt phase. The State concedes that Appellant was entitled to a retrospective competency hearing and asserts that the March 2024 hearing satisfied this obligation.

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). One "is incompetent to stand trial if" he lacks either (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational and factual understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46B.003(a); *Ochoa v. State*, Nos. 07-16-00400-CR, 07-16-00401-CR, 2018 Tex. App. LEXIS 1816, at *8–9 (Tex. App.—Amarillo Mar. 12, 2018, no pet.) (per curiam) (mem. op., not designated for publication). A defendant is presumed to be competent to stand trial until proven otherwise by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art 46B.003(b); *Hobbs v. State*, 359 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In assessing a defendant's competency, trial courts utilize a two-step process involving firstly an informal inquiry and secondly a formal competency trial. *Boyett*, 545 S.W.3d at 563. Here, the trial court sua sponte conducted an informal inquiry into Appellant's competence to stand trial based on Appellant's statements and behavior at the outset of the sentencing phase. *See* Tex. Code Crim. Proc. Ann. art. 46B.005(d)

7

(question of competency may be raised "after the trial on the merits begins" and decided "at any time before the sentence is pronounced"). The trial court then proceeded to the second step, ordering an examination to determine whether Appellant was incompetent to stand trial. *Id.* art. 46B.005(a); *see also Queen v. State*, 212 S.W.3d 619, 620 (Tex. App.—Austin 2006, no pet.). Two doctors examined Appellant, after which the trial court ordered a competency jury trial.[7] The trial court's order did not state any limitations on the scope of the inquiry. Appellant's competency trial occurred approximately sixteen months after the guilty verdict and prior to sentencing.

The record from the competency trial reflects that Appellant's counsel and counsel for the State referenced the reports provided by Drs. Matteson and Arambula and that the trial court considered those reports. Dr. Arambula's report specifically addressed the guilt/innocence phase of the trial, noting, "During the guilt / innocence phase of the instant trial, [Appellant] had a rational as well as factual understanding of the proceedings against him, and sufficient ability to consult with his attorney with a reasonable degree of rational understanding." In its findings of fact and conclusions of law, the trial court found, among other things, that "[d]uring the time [Appellant] was in the courtroom, he demonstrated that he had a firm grasp of the defense attorney's role and the judge's role" and that Appellant had "behaved appropriately" during the guilt/innocence phase of the trial. The trial court concluded that Appellant "has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, but refused to do so" and that "he has a rational as well as factual understanding of the proceedings against him." The

---

[7] The order encompassed the present matter along with two other criminal causes then pending against Appellant.

8

trial court further concluded that Appellant did not overcome the presumption of competency to stand trial.

These circumstances lead us to conclude that the competency trial of March 2024 was intended to and did address the question of Appellant's competency at the guilt/innocence phase as well as at the time of the competency trial. Although several months had passed from the time Appellant was examined to the time of the competency trial, the issue was determined within the timeframe established in article 46B.005(d), i.e., after the trial had begun but before sentence was pronounced. TEX. CODE CRIM. PROC. ANN. art. 46B.005(d). Therefore, we overrule Appellant's first issue.

Waiver of Jury Sentencing

By his second issue, Appellant argues that he is entitled to a new punishment hearing because he never expressly waived jury sentencing. The gravamen of Appellant's complaint, as set forth in his opening brief, is that his waiver of jury sentencing in December of 2022 could not be "a legally effective express waiver" because Dr. Matteson declared him to be incompetent the following day. Our resolution of Appellant's first issue compels the conclusion that Appellant was competent when he sought bench sentencing in December of 2022. Thus, we overrule this issue.

To the extent that Appellant argues that his waiver of his right to jury sentencing was ineffective because it was not an "express" waiver for another reason, the outcome is unchanged because Appellant failed to preserve his complaint. Appellant lodged no objection when the trial court assumed the task of assessing punishment. When a defendant elects for the jury to assess punishment, but then makes no objection when

the trial court assesses punishment, it is presumed that the defendant agreed to the trial court assessing punishment. *Hackey v. State*, 500 S.W.2d 520, 521 (Tex. Crim. App. 1973); *Jones v. State*, No. 06-16-00110-CR, 2017 Tex. App. LEXIS 4676, at *2–3 (Tex. App.—Texarkana May 24, 2017, pet. ref'd) (mem. op., not designated for publication) (appellant waived statutory right to have jury assess punishment because he failed to object when trial court dismissed jury and assessed punishment); *Mangham v. State*, 833 S.W.2d 705, 708 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (defendant's right to jury-assessed punishment waived by failure to object). Appellant's second issue is overruled.

Right to Jury Trial on Competency Issue

The trial court initially set Appellant's competency trial as a jury trial, but the cause was heard by the trial court without a jury, a change not explained in the record.[8] In his third issue, Appellant asserts that, once the issue of competency was set for a jury trial, the trial court had a sua sponte duty to impanel a jury and proceed to a jury trial. Appellant further claims that he was not obligated to object to the bench trial because he did not affirmatively waive his right to a jury.

The issue of competency is decided by the trial judge unless either party requests, or the trial judge on his own motion directs, that it be decided by a jury. TEX. CODE CRIM. PROC. ANN. art. 46B.051(a) ("If a court holds a trial to determine whether the defendant is incompetent to stand trial, on the request of either party or the motion of the court, a jury

---

[8] The trial court issued an order on September 19, 2023, setting the matter for jury trial on October 30, 2023. The case was tried to the bench on March 27, 2024. No party objected to the bench trial.

shall make the determination."). If neither side requests a jury, the trial court need not impanel one.

Here, although the matter was at one point set for a jury trial, the record is silent as to the reason. No written motion appears in the record and there is no evidence indicating that either Appellant or the State requested a jury trial on the competency issue. Indeed, Appellant does not assert that he made such a request. Instead, he contends that we must presume that someone requested a jury and that, consequently, Appellant's right to have a jury determine his competence was inviolable. However, Appellant has not presented any legal authority supporting this contention.

It is clear from the language of article 46B.051(a) that the statute creates an affirmative duty to expressly request or move for a jury for a competency trial. Appellant has not shown that he or anyone else sought a jury trial. Therefore, pursuant to the statute, we conclude that Appellant's right to a jury trial for the proceeding was waived. *See Turner v.* State, 570 S.W.3d 250, 262 n.20 (Tex. Crim. App. 2018) ("Under the competency statute, the issue of competency is decided by the trial judge unless either party requests, or the trial judge on his own motion directs, that it be decided by a jury."). We overrule Appellant's third issue.

In his fourth issue, Appellant argues, in the alternative, that he was excused from objecting to the bench trial because he was incompetent at the time. Our resolution of Appellant's first issue is dispositive of this issue, as we have concluded that the trial court's finding of competency encompassed all phases of the trial. Appellant's fourth issue is overruled.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.


Judy C. Parker
Justice


Do not publish.